IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| IN RE: | **)** | CHAPTER 7 |
| | **)** | |
| JOSEPH SIDNEY DUMAS, | **)** | CASE NO. 16-50095-JPS |
| *AKA J. SIDNEY DUMAS* | **)** | |
| | **)** | |
| Debtor. | **)** | |
| | **)** | |
| STERLING NATIONAL BANK, AS | **)** | CONTESTED MATTER |
| SUCCESSOR BY MERGER TO | **)** | |
| ASTORIA BANK, | **)** | |
| | **)** | |
| Movant. | **)** | |
| | **)** | |
| vs. | **)** | |
| | **)** | |
| JOSEPH SIDNEY DUMAS, | **)** | |
| *AKA J. SIDNEY DUMAS* | **)** | |
| WILLIAM FLATAU, Trustee | **)** | |
| | **)** | |
| Respondents. | **)** | |

<u>NOTICE OF HEARING</u>

MOVANT HAS FILED DOCUMENTS WITH THE COURT TO OBTAIN RELIEF FROM
THE AUTOMATIC STAY.

**<u>YOUR RIGHTS MAY BE AFFECTED.</u>  You should read these documents carefully and
discuss them with your attorney, if you have one in this bankruptcy case. <u>If you do not have
an attorney, you may wish to consult one.</u> If not served with this notice in accordance with
the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure, a copy of the motion
may be obtained upon written request to counsel for the Movant (identified below) or at the
Clerk's office.**

If you do not want the court to grant relief from the automatic stay or if you want the court to
consider your views on the motion, then you or your attorney shall attend the hearing scheduled
to be held on:

**January 4, 2018 at  10:30 A.M. at the United States Bankruptcy Court, 433 Cherry Street,
Courtroom A, Macon, Georgia 31201**.

**If you or your attorney does not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting relief.**

This notice is sent by the undersigned pursuant to LBR 9004-1(c) and LBR 9007-1.

Dated this          11/30/2017        

*/s/ Ciro A Mestres*

Ciro A Mestres, GEORGIA BAR NO. 840253

Attorney for Movant

McCalla Raymer Leibert Pierce, LLC

1544 Old Alabama Road

Roswell, Georgia 30076

678-281-6516

Ciro.Mestres@mccalla.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| JOSEPH SIDNEY DUMAS, | ) | CASE NO. 16-50095-JPS |
| *AKA J. SIDNEY DUMAS* | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| STERLING NATIONAL BANK, AS | ) | CONTESTED MATTER |
| SUCCESSOR BY MERGER TO | ) | |
| ASTORIA BANK, | ) | |
| | ) | |
| Movant. | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JOSEPH SIDNEY DUMAS, | ) | |
| *AKA J. SIDNEY DUMAS* | ) | |
| WILLIAM FLATAU, Trustee | ) | |
| | ) | |
| Respondents. | ) | |

MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND WAIVER OF
30-DAY REQUIREMENT OF 11 U.S.C. §362(e)

COMES NOW Movant and shows this Court the following:

1.

This is a Motion under 362(d) of the Bankruptcy Code for relief from the automatic stay

for all purposes allowed by law and the contract between the parties, including, but not limited

to, the right to foreclose on certain real property.

2.

Movant is the servicer of a loan secured by certain real property in which Debtor claims

an interest.  A copy of the Security Deed is attached hereto and made a part hereof.  Said real

property is security for a promissory note, and is commonly known as 864 Wimbeldon Court, Macon, Georgia 31210 (hereinafter referred to as the "Property").

3.

Debtor has not made payments which have come due according to the terms of the Security Deed and Note.  As of November 9, 2017, Debtor is delinquent for one (1) payment of $542.52 and one (1) payment of $589.18, pursuant to the Note. The total amount of delinquent payments is $1,131.71.

4.

Movant estimates the value of the Property to be $305,000.00 based upon Debtor's Schedule A.

5.

As of November 9, 2017, Movant's total claim is approximately $115,459.31, consisting of: unpaid principal balance of $114,403.60; interest of $791.49; and corporate advances of $264.22.  This is not an exact figure and may not be relied upon for payoff purposes.

6.

To the best of Movant's knowledge, information and belief, the loan it services is first in priority.  Movant has no knowledge, information or belief as to any other secured claims against the Property, other than a second lien in the amount of $276,541.03, held by State Bank and Trust Company, according to Debtor's Schedule D.

7.

Movant seeks relief from the automatic stay pursuant to 11 U.S.C. §362(d)(1) because Debtor has defaulted in making payments pursuant to the Note.  Movant is not adequately protected because there is little or no equity in the Property.

8.

Pursuant to the contract between the parties, Movant is entitled to reasonable attorney's fees and costs for prosecuting this Motion.

9.

Movant requests it be permitted to contact the Debtor via telephone or written correspondence regarding potential loss mitigation options pursuant to applicable non-bankruptcy law, including loan modifications, deeds in lieu of foreclosure, short sales and/or any other potential loan workouts or loss mitigation agreements.

10.

By signature of its counsel, Movant hereby waives the requirement under 11 U.S.C §362(e) that a hearing on this Motion be held within 30 days of the date it was filed.

11.

Pursuant to Local Bankruptcy Rule 4001-1(a)5 and O.C.G.A. §44-14-162.2, the name of the person or entity who has full authority to negotiate, amend or modify the terms of the aforementioned indebtedness is: Sterling National Bank, as successor by merger to Astoria Bank, 1 Corporate Drive, Suite 360, Lake Zurich, IL, 60047-8924; (847) 330-8098. Please be advised that the secured creditor *is not required* by law to negotiate, amend, or modify the terms of the Mortgage Instrument.

WHEREFORE, Movant prays (1) for an Order modifying the automatic stay, authorizing Movant, its successors and assigns, to proceed with the exercise of its private power of sale and to foreclose under its Security Deed and appropriate state statutes; (2) for an award of reasonable attorney's fees; (3) that Movant, at its option, be permitted to contact the Debtor via telephone or

written correspondence regarding potential loss mitigation options pursuant to applicable non-bankruptcy law, including loan modifications, deeds in lieu of foreclosure, short sales and/or any other potential loan workouts or loss mitigation agreements; (4) for waiver of Bankruptcy Rule 4001 (a)(3); and (5) for such other and further relief as is just and equitable.

*/s/ Ciro A Mestres*
Ciro A Mestres, Georgia BAR NO. 840253
Attorney for Movant
McCalla Raymer Leibert Pierce, LLC
1544 Old Alabama Road
Roswell, Georgia 30076
Ciro.Mestres@mccalla.com
678-281-6516
678-281-6516

BANKRUPTCY CASE NO. 16-50095-JPS

CHAPTER 7

CERTIFICATE OF SERVICE

I, Ciro A Mestres, of McCalla Raymer Leibert Pierce, LLC, 1544 Old Alabama Road, Roswell, Georgia 30076-2102, certify:

That on the date below, I served a copy of the within NOTICE OF HEARING, together with the MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND WAIVER OF 30-DAY REQUIREMENT OF 11 U.S.C. §362(e) filed in this bankruptcy matter on the following parties at the addresses shown, by regular United States Mail, postage prepaid, unless another manner of service is expressly indicated:

Joseph Sidney Dumas
864 Wimbledon Court
Macon, GA 31210

David L. Bury, Jr.                          *(served via ECF notification)*
Stone & Baxter, LLP
577 Mulberry Street
Suite 800
Macon, GA 31201

William Flatau                              *(served via ECF notification)*
118 Idle Hour Drive
Macon, GA 31201

I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on:   __11/30/2017__   By:   ***/s/ Ciro A Mestres***
                     (date)              Ciro A Mestres Georgia BAR NO. 840253
                                         Attorney for Movant

# FIXED/ADJUSTABLE RATE NOTE
### (One-Year Treasury Index - Rate Caps)

**THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

09/16/2003                  **GREENSBORO**                    **GEORGIA**
    [Date]                                    [City]                                  [State]

**864 WIMBELDON CT, MACON, GEORGIA   31210**

[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $**145,000.00**          (this amount is called "Principal"), plus interest, to the order of Lender. Lender is

**ASTORIA FEDERAL MORTGAGE CORP.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **4.125**          %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3.  PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on **November 1, 2003**         . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **October 1, 2043**        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **2000 MARCUS AVENUE**
**LAKE SUCCESS, NEW YORK   11042**
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $**617.33**          . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4.  ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of **October, 2006**         , and the adjustable interest rate I will pay may change on that day every 12th month thereafter.

MULTISTATE FIXED/ADJUSTABLE RATE NOTE - ONE-YEAR TREASURY INDEX - Single Family - **Fannie Mae UNIFORM INSTRUMENT**

**VMP**-843N (0005).01              **Form 3522 1/01**
  VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 5                                      Initials

The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding
**Two and 750/1000**         percentage points (**2.750**                    %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **6.125**           % or less than **2.750**                  %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than **10.125**          %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)  Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.   BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.   LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.



## 7.    BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15**      calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000**      % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8.    GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10.    WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11.    UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:



**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B)  When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section  4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.



Form 3522 1/01

Initials:

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)                    _____ (Seal)
-Borrower    J SIDNEY   DUMAS                                   -Borrower

_____ (Seal)                    _____ (Seal)
-Borrower    SUSAN C DUMAS                                      -Borrower

_____ (Seal)                    _____ (Seal)
-Borrower                                                       -Borrower

_____ (Seal)                    _____ (Seal)
-Borrower                                                       -Borrower

PAY TO THE ORDER OF                                 *[Sign Original Only]*

_____

Without Recourse
Astoria Federal Mortgage Corporation

Nancy Boylan, Assistant Secretary

PAY TO THE ORDER OF ASTORIA BANK
F/K/A ASTORIA FEDERAL SAVINGS &
LOAN ASSOCIATION

Without Recourse
Astoria Federal Mortgage Corporation

Walter Krzminski
Assistant Secretary

Loan No. 

# LENDER'S NOTE RIDER

**I FURTHER COVENANT, PROMISE AND AGREE WITH THE NOTE HOLDER AS FOLLOWS:**

**1. PRINTED NOTE AND MORTGAGE AND THIS RIDER -** The Rider changes, adds to, or deletes, certain provisions of the printed Note. The printed Note and this Rider will at times collectively be called "The Note". I agree that the Mortgage protecting this Note, including the riders to such Mortgage, and this Rider, are all part of the Note. Whenever the Note differs or conflicts with this Rider, this Rider will control. The Note or this Rider cannot be changed, altered, modified, waived or terminated orally.

**2. BORROWER'S FAILURE TO KEEP PROMISES AND AGREEMENTS -** If my loan is a fixed rate loan, Section Section 6(C) of the printed Note is deleted. If my loan is an adjustable rate loan, Section 7(C) of the printed Note is deleted. If any event stated in Section 2 of the Lender's Mortgage Rider occurs, Note Holder may accelerate the normal maturity of the Loan and require that I pay immediately any and all sums I owe Note Holder (called "Immediate Payment in Full"). Prior to requiring ImmediatePayment in Full, Lender will send to me, in the manner described in Section 15 of the Mortgage, a notice that states (i) the promise or agreement that I failed to keep or the default that has occurred; (ii) the action that I must take to correct the default; (iii) a date, at least 30 days from the date the notice is given, by which I must correct the default; (iv) that if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale; and (v) that I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and Mortgage, and to present any other defenses that I may have. Note Holder may also invoke any other remedies permitted by law, or any loan or other document I give in connection with the Loan. If Note Holder requires Immediate Payment In Full, Note Holder may, among other things, increase my interest rate as provided in this Rider and bring a lawsuit to take away all of my remaining rights in the Property and to have the Property sold. At this sale Note Holder or another person may acquire the Property. This is known as "foreclosure and sale".

**3. HIGHER INTEREST RATE AFTER DEFAULT-** The second paragraph of Section 2 of the printed Note is deleted. The interest rate required by Section 2 of the Note is the rate I will pay before any default which results in the Note Holder demanding Immediate Payment In Full as described above. However, if Note Holder demands Immediate Payment In Full as described above, I agree to pay interest at a rate of five (5) per cent per year in excess of the rate in effect on the Note from the date that I defaulted or failed to keep any promise or agreement contained in any loan or other document I give in connection with this Loan, but in no event in excess of the maximum legal default rate of interest permitted under any law specifically applicable to Note Holder and the Note and Mortgage. Such higher rate of interest will apply to all sums owed by borrower under the Note or Mortgage.

**4. LOAN CHARGES -** If my loan is a fixed rate loan, this Section is added to Section 5 of the Note. If my loan is an adjustable rate loan, this Section is added to Section 6 of the printed Note. Nothing contained in this Note nor any transaction relating to this Note shall be construed or shall operate either presently or prospectively to require me to pay interest at a rate that is greater than is lawful for me to contract for. Any credit or refund shall not cure or waive any default by me.

**5. TRANSFER OF NOTE AND MORTGAGE -** Note Holder may transfer the Note, and transfer or assign the Mortgage, and Note Holder's right, title and interest, in whole or in part, without notice and without my consent. If the (i) Federal National Mortgage Association (FNMA), (ii) the Federal Home Loan Mortgage Corporation (FHLMC), (iii) the Federal Home Loan Bank (FHLB), or (iv) any other entity other than an entity which is owned in whole or in part by Note Holder, an owner of Note Holder, or any successor to Note Holder or its owner, buys all or some of the Note Holder's rights, this rider will automatically be deemed void, in which event all the terms and conditions contained in the Note and Mortgage will be fully effective. The Note Holder, and any other party who buys any or all of Note Holder's rights, may, at any time, also terminate the effectiveness of this rider, or any part of this rider, by merely voiding same and notifying the Borrower to that effect, in which event the applicable terms and conditions of the Note or the Mortgage will be fully applicable. However, either FNMA, FHLMC, FHLB, Note Holder, or any assignee may reinstate any of the provisions of this rider at any time by notifying the Borrower to that effect, in which event such provision will be in full force and effect.



6.  **EFFECT OF THIS RIDER -** Nothing contained in this Rider shall be construed as depriving Note Holder of any right or advantage available under the Note, the Mortgage, or any of the other loan documents, or under any applicable law, rule or regulation, but any provision in this document differing from the Note, Mortgage, other loan documents or any law, rule or regulation shall be construed as conferring additional, and not substitute, rights and advantages.  If I fail to comply with the promises and agreements I have made in this rider, you, the Note Holder can declare a default and avail yourself of all of the rights and remedies set forth in any of the loan documents.


BY SIGNING BELOW, I accept and agree to the promises and agreements contained in this Rider.


_____          _____
J SIDNEY  DUMAS                                                09/16/2003

_____          _____
SUSAN C DUMAS                                               09/16/2003

_____          _____
                                                                        09/16/2003

_____          _____
                                                                        09/16/2003

BOOK 5 9 8 5 PAGE 5 2

Return To:

ASTORIA FEDERAL MORTGAGE
CORP.
2000 MARCUS AVENUE
LAKE SUCCESS, NY 11042

Record and return to:
J. Kenneth Walker
Martin, Snow, Grant & Napier
P. O. Box 1606
Macon, GA 31202-1606



GEORGIA INTANGIBLE TAX PAID
$ 735.00
10-24-03
DIANNE BRANNEN-CLERK SUPERIOR COURT
By _____ Dep. Clerk

Prepared By:

ASTORIA FEDERAL MORTGAGE
CORP.

**NIVIN JOUDEH**

——————————[Space Above This Line For Recording Data]——————————

# SECURITY DEED



## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **September 16, 2003**,
together with all Riders to this document.
**(B) "Borrower"** is
**J SIDNEY DUMAS and SUSAN C DUMAS**

Borrower is the grantor under this Security Instrument.
**(C) "Lender"** is
**ASTORIA FEDERAL MORTGAGE CORP.**
Lender is a **Corporation**
organized and existing under the laws of **The State Of New York**

**GEORGIA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**        Form 3011  1/01

-6(GA) (0005)

Page 1 of 14                    Initials:

VMP MORTGAGE FORMS - (800)521-7291

BOOK **5 9 8 5** PAGE    **5 3**

Lender's address is **2000 MARCUS AVENUE**
**LAKE SUCCESS, NEW YORK 11042**
Lender is the grantee under this Security Instrument.
**(D) "Note"** means the promissory note signed by Borrower and dated **September 16, 2003**
The Note states that Borrower owes Lender
**One Hundred Forty-Five Thousand and 00/100ths**                                    Dollars
(U.S. $ **145,000.00**              ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **October 1, 2043**                      .
**(E) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [x] Other(s) [specify] |
| [ ] Home Equity Rider | | |
| [x] AF Mortgage Rider | | |

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(K) "Escrow Items"** means those items that are described in Section 3.
**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.



BOOK 5985 PAGE 54

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the **County**                              of **BIBB**                                                    :
　　　　　　[Type of Recording Jurisdiction]                            [Name of Recording Jurisdiction]
**SEE ATTACHED SCHEDULE "A" LEGAL DESCRIPTION**

Parcel ID Number ██████████                                which currently has the address of
**864 WIMBELDON CT**                                                                    [Street]
**MACON**                                        [City] , Georgia **31210**            [Zip Code]
("Property Address"):

　　　TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
　　　BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
　　　THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.
　　　UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
　　　**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.



BOOK 5985 PAGE 55

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

 

BOOK 5985 PAGE 56

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

 

BOOK 5985 PAGE 57

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with



BOOK 5 9 8 5 PAGE 5 8

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying

 

reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

BOOK 5985 PAGE 60

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

BOOK **5 9 8 5** PAGE **6 1**

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

BOOK 5 9 8 5 PAGE   62

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

BOOK 5985 PAGE 63

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.



BOOK **5985** PAGE **64**

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**25. Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**26. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.



BOOK 5985 PAGE 65

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____ (Seal)          _____ (Seal)
J  SIDNEY  DUMAS              -Borrower                                       -Borrower

_____ (Seal)          _____ (Seal)
SUSAN  C  DUMAS              -Borrower                                       -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                                       -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                                       -Borrower

**STATE OF GEORGIA,**                                   County ss:
  Signed, sealed and delivered in the presence of:

_____
JESSICA M. LASTER
Notary Public
STATE OF GEORGIA
My Comm. Exp. Oct. 07

Georgia - Bibb County Clerk's
Office of Superior Court

Rec.    OCT 2 7 2003    JM

_____
DEPUTY CLERK

BOOK 5985 PAGE 52

_____
Unofficial Witness

_____
Notary Public,                          County
State of Georgia

## Exhibit "A"

BOOK 5 9 8 5 PAGE   6 6

All that tract or parcel of land situate, lying and being in Bibb County, Georgia, being known and distinguished as Lot No. 52 of Wimbledon Woods Subdivision - Section III, more particularly described according to plat of record in Plat Book 62, Pages 91 through 93, inclusive, Clerk's Office, Bibb Superior Court, which said plat is by this reference thereto incorporated herein for the purpose of a more particular and accurate description of said Lot No. 52 hereby conveyed.

ALSO, all that tract or parcel of land situate, lying and being in Bibb County, Georgia, being known and distinguished as Parcel "B-6B" of Wimbledon Woods Subdivision - Section III, more particularly described according to plat of record in Plat Book 62, Pages 91 through 93, inclusive, Clerk's Office, Bibb Superior Court, which said plat is by this reference thereto incorporated herein for the purpose of a more particular and accurate description of said Parcel "B-6B" hereby conveyed.

There are improvements located thereon known under the present system of numbering as 864 Wimbledon Court, Macon, Bibb County, Georgia.

ALSO, all that tract or parcel of land situate, lying and being in Bibb County, Georgia, being known and distinguished as Lot 53-B, containing 10,205 square feet in a Resubdivision of Original Lot No. 53 of Wimbledon Woods Subdivision, more particularly described according to plat of record in Plat Book 89, Page 287, Clerk's Office, Bibb Superior Court, which said plat is by this reference thereto incorporated herein for the purpose of a more particular and accurate description of said Lot No. 53-B hereby conveyed.

File Number

Legal Description with Non Homestead
Closer's Choice

GRANTOR(S) :   J SIDNEY DUMAS and SUSAN C DUMAS

LENDER :        ASTORIA FEDERAL MORTGAGE CORP.      BOOK 5985 PAGE   67

DATE OF SECURITY DEED : 09/16/2003

### WAIVER OF BORROWER'S RIGHTS

By execution of this paragraph, Grantor expressly: (1) acknowledges the Right to Accelerate the debt and the Power of Attorney given herein to Lender to sell the premises by Non-judicial Foreclosure upon default by Grantor without any judicial hearing and without any notices other than such notice as is specifically required to be given under the provisions of said Security Deed; (2) waive any and all rights which grantor may have under the Fifth and Fourteenth Amendments to the constitution of the United States, the various provisions of the Constitution for the several states, or by reason of any other applicable law, to notice and to judicial hearing prior to the exercise by Lender of any rights or remedy herein provided to Lender, except such notice as is specifically required to be provided in said Security Deed; (3) acknowledges that Grantor has read this deed and any and all questions regarding the legal effect of said Deed and its provisions have been explained fully to Grantor and Grantor has been afforded an opportunity to consult with counsel of Grantor's choice prior to executing this Deed; (4) acknowledges that all waivers of the aforesaid rights of Grantor have been made knowingly, intentionally and willingly by Grantor as part of a bargained for loan transaction; (5) agrees that Grantor's right to notice shall be limited to those rights to notice provided by this deed and no other; and (6) agrees that the provisions hereof are incorporated into and made a part of the Security Deed.

READ AND AGREED BY GRANTOR

Signed, sealed and delivered in the
presence of :

_____ (SEAL)
J SIDNEY DUMAS

_____
Unofficial Witness

_____ (SEAL)
SUSAN C DUMAS

_____
Notary Public

_____ (SEAL)

_____ (SEAL)

JESSICA M. LASTER
Notary Public
STATE OF GEORGIA
My Comm. Exp. 4/28/07

### CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who having been first duly sworn according to law, states under oath as follows :

In closing the above loan, but prior to the execution of the Security Deed and "Waiver of Borrower's Rights", by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Security Deed and particularly the provisions thereof authorizing the Lender to sell the secured property by a non-judicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with the explanation to Borrower(s), Borrower(s) executed the Security Deed and "Waiver of Borrower's Rights."

Based on said review with the explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally, and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such non-judicial foreclosure.

_____
CLOSING ATTORNEY

Sworn to and subscribed before me this ___16th___ day of ___SEPTEMBER, 2003___

_____
Notary Public

My Commission Expires : _____

JESSICA M. LASTER
Notary Public
STATE OF GEORGIA
My Comm. Exp. 4/28/07

### FORECLOSURE CLOSING DISCLOSURE

O.C.G.A. Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.

_____
J SIDNEY DUMAS

_____
SUSAN C DUMAS

_____

_____

BOOK **5985** PAGE   **68**

Loan No. ███████████

# LENDER'S MORTGAGE RIDER

**I FURTHER COVENANT, PROMISE AND AGREE WITH THE LENDER AS FOLLOWS:**

**1. Printed Note And Mortgage And This Rider; "Lender".** This Rider changes, adds to, or deletes, certain provisions of the printed Mortgage/Deed of Trust/Security Deed ("Mortgage" or "Security Instrument"). I agree that the Note referred to in this Mortgage, including the rider to such Note (collectively, the "Note"), and this Rider, are all part of the Mortgage. Whenever the Mortgage differs or conflicts with this Rider, this Rider will control. The term "Lender" includes any owner and/or holder of the Mortgage. This Mortgage and Rider cannot be changed, altered, modified, waived or terminated orally.

**2. Borrower's Defaults.** Sections 19 and 22 of the Mortgage are deleted. Any reference to Section 22 of the Mortgage is changed to refer to this Section 2. If any event stated below occurs, Lender may accelerate the normal maturity of the Loan and require that I pay immediately any and all sums I owe to Lender (called "Immediate Payment In Full").

Lender may also invoke any other remedies permitted by law, the Mortgage, the Note, and/or any other document I give in connection with the Loan, including the power of sale for the purpose of foreclosure by advertisement, by means of which Lender may take away all of my remaining rights in the Property and sell the Property at public auction.

If Lender requires Immediate Payment In Full, Lender may, among other things, increase my interest rate by five (5) per cent per year as provided in the Note, and bring a lawsuit to take away all of my remaining rights in the Property and to have the Property sold. At this sale Lender or another person may acquire the Property. This is known as "foreclosure and sale". In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs allowed by law, and other reasonable costs, expenses and attorney's fees. If Lender has required immediate payment in full, I understand that I have no right to have enforcement of the Mortgage discontinued.

Prior to requiring Immediate Payment in Full, Lender will send to me, in the manner described in Section 15 of the Mortgage, a notice that states (i) the promise or agreement that I failed to keep or the default that has occurred; (ii) the action that I must take to correct the default; (iii) a date, at least 30 days from the date the notice is given, by which I must correct the default; (iv) that if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale; and (v) that I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and Mortgage, and to present any other defenses that I may have.



**3. Foreclosure Search; Receiver, Foreclosure and Sale.** If I do not keep a promise and/or agreement I have made to Lender, Lender may, among other things, obtain a "foreclosure search" and/or refer this Loan to an attorney for collection. I give Lender the right to have a receiver appointed without giving notice to me and whether or not the value of the Property is worth more than the amount I owe on the Mortgage or this Rider. I will pay the Lender reasonable rent from the date any judgement of foreclosure is entered for as long as I occupy the Property, but this does not give me the right to occupy the Property. If there is a foreclosure and sale, I agree that all of the Property or any part of the Property that is affected by the Mortgage may be sold together as one parcel unless the Lender requests that the Property be sold in more than one parcel. Lender may exercise its option to require Immediate Payment In Full during any default regardless of any prior forbearance. If suit is brought to collect any amount due to the Lender, Lender shall be entitled to collect all reasonable costs, expenses and attorney's fees. Furthermore, if I am in default, I promise to pay all costs of collection including reasonable attorney fees, whether or not a lawsuit is commenced as part of the collection process. Costs shall include the cost of a foreclosure search. My obligation to pay attorney fees and collection and court costs will survive my default or the termination of the Note, this Mortgage or any other document I sign in connection with this loan, or the repayment of the Loan.

**4. Forfeiture.** Anything in the seventh paragraph of Section 11 of the Mortgage to the contrary notwithstanding, Lender may require immediate payment in full and/or enforce any and all of its rights if any such civil or criminal action or proceeding for forfeiture is begun and prior to the entry of such final and binding court ruling.

**5. Authorization.** If the Mortgagor is a corporation, the execution of this Mortgage has been duly authorized by its Board of Directors. If the Mortgagor is a partnership, limited partnership, limited liability company, limited liability partnership or other entity, the execution of this Mortgage has been duly authorized and consented to in accordance with the partnership agreement, operating agreement, or other applicable organizational document.

**6. Miscellaneous Proceeds.** The fourth and fifth paragraphs of Section 11 of the Mortgage are superseded by the provisions of this Section. If all or if only a part of the Property is taken, destroyed or reduced in value, the proceeds will be used to reduce the sums secured. If any of the proceeds remain after the amount I owe to Lender has been paid in full, the remaining proceeds will be paid to me. I will give Lender any and all assignments and other instruments required by Lender for the purpose of assigning the award or awards to the Lender free of any other right or claim of any kind or nature. If for a time after any property is taken the agency or authority delays making payment but instead pays interest, I will pay Lender the difference between the interest Lender receives and the interest I would owe under the Note.

**7. Borrower's Payments.** The provisions of Section 1 of the Mortgage notwithstanding, Lender, at its option, need not apply partial or incomplete payments, and may hold any partial or incomplete payments until Lender has actually received funds comprising a full and complete payment. Lender need not pay interest on unapplied funds regardless of whether interest on principal accrues as if all Periodic Payments had been paid when due.

**8. Mortgage Transfer.** Lender may transfer the Note, and transfer or assign the Mortgage, and Note Lender's right, title and interest, in whole or in part, without notice and without my consent. If the (i) Federal National Mortgage Association (FNMA), (ii) the Federal Home Loan Mortgage Corporation (FHLMC), (iii) the Federal Home Loan Bank (FHLB), or (iv) any other entity other than an entity which is owned in whole or in part by Lender, an owner of Lender, or any successor to Lender or its owner, buys all or some of the Lender's rights, this rider will automatically be deemed void, in which event all the terms and conditions contained in the Note and Mortgage will be fully effective. The Lender, and any other party who buys any or all of Lender's rights, may, at any time, also terminate the effectiveness of this rider, or any part of this rider, by merely voiding same and notifying the Borrower to that effect, in which event the applicable terms and conditions of the Note or the Mortgage will be fully applicable. However, either FNMA, FHLMC, FHLB, Note Holder, or any assignee may reinstate any of the provisions of this rider at any time by notifying the Borrower to that effect, in which event such provision will be in full force and effect.

BOOK **5 9 8 5** PAGE    **70**

**9. Rental Payments and Possession of the Property.** As additional protection for Lender, I give to Lender all of my rights to any rental payments from the Property. However, until Lender requires Immediate Payment In Full under Section 2 herein, or until I abandon the Property, I have the right to collect and keep those rental payments as they become due. I will not collect more than one (1) month's rent in advance without the Lender's written consent. I have not given any of my rights to rental payments from the Property to anyone else, and I will not do so without Lender's consent in writing. If Lender requires Immediate Payment In Full under Section 2 herein, or if I abandon the Property, then Lender, persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) Collect the rental payments including overdue rental payments, directly from the tenants; (B) enter on and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change leases. I agree that if Lender notifies the tenants that Lender has the right to collect rental payments directly from the tenants under this Section 9 the tenants may make those rental payments to Lender without having to ask whether I have failed to keep my promises and agreements under this Mortgage. If there is a judgment for Lender in a lawsuit for foreclosure and sale I will pay to lender reasonable rent from the date the judgment is entered for as long as I occupy the Property. However, this does not give me the right to occupy the Property. All rental payments collected by Lender or by a receiver, other than the rent paid by me under this Section 9, will be used first to pay the costs of collecting the rental payments and of managing the Property. The balance, if any, will be used to reduce the amount that I owe to Lender under the Note and under this Mortgage. The costs of managing the Property may include receiver's fees, reasonable attorney's fees, and the cost of any necessary bonds. Lender and the receiver will be obligated to account only for those rental payments that they actually receive.

**10. Effect of this Rider.** Nothing contained in this Rider shall be construed as depriving Lender of any right or advantage available under the Note, Mortgage, or any of the other loan documents, or under any applicable law, rule or regulation, but any provision in this document differing from the Note, Mortgage, other loan documents or any law, rule or regulation shall be construed as conferring additional, and not substitute, rights and advantages. If I fail to comply with the promises and agreements I have made in this Rider, you, the Lender, can declare a default and avail yourself of all of the rights and remedies set forth in any of the loan documents.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in this Rider.

_____       _____
J SIDNEY DUMAS                                           09/16/2003

_____       _____
SUSAN C DUMAS                                            09/16/2003

_____       _____
                                                                  09/16/2003

_____       _____
                                                                  09/16/2003

BOOK 5985 PAGE 71

# FIXED/ADJUSTABLE RATE RIDER
### (One-Year Treasury Index - Rate Caps)

THIS FIXED/ADJUSTABLE RATE RIDER is made this 16th    day of **September, 2003**    ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to
secure Borrower's Fixed/Adjustable Rate Note (the "Note") to
**ASTORIA FEDERAL MORTGAGE CORP.**

("Lender") of the same date and covering the property described in the Security Instrument and located at:
**864 WIMBELDON CT, MACON, GEORGIA  31210**

[Property Address]

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST
RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE
AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT
ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial fixed interest rate of **4.125**                    %. The Note also
provides for a change in the initial fixed rate to an adjustable interest rate, as follows:
**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
    **(A) Change Dates**
    The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of
**October, 2006**           , and the adjustable interest rate I will pay may change on that
day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable
interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**MULTISTATE FIXED/ADJUSTABLE RATE RIDER - ONE-YEAR TREASURY INDEX- Single Family -
Fannie Mae Uniform Instrument**

VMP-843R (0006).01        **Form 3182 1/01**
®
Page 1 of 4              Initials:
VMP MORTGAGE FORMS - (800)521-7291

BOOK 5985 PAGE 72

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Two and 750/1000** percentage points **(2.750** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **6.125** % or less than **2.750** %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than **10.125** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

VMP®-843R (0006).01                    Page 2 of 4        Initials: [signature]        Form 3182 1/01

BOOK 5 9 8 5 PAGE 73

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2.  When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all

Initials:

BOOK 5 9 8 5 PAGE 74

sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
        -Borrower          J SIDNEY DUMAS          -Borrower

_____ (Seal)          _____ (Seal)
        -Borrower          SUSAN C DUMAS          -Borrower

_____ (Seal)          _____ (Seal)
        -Borrower          -Borrower

_____ (Seal)          _____ (Seal)
        -Borrower          -Borrower

BOOK 5 9 8 5 PAGE 52

VMP-843R (0006).01          Page 4 of 4          Georgia - Bibb County Clerk 3182 1/01
  ®          Office of Superior Court

Rec.    OCT 2 7 2003    JM

DEPUTY CLERK

Case 16-50095    Doc 266    Filed 11/30/17    Entered 11/30/17 16:32:24    Desc Main
Document        Page 38 of 38



FFIEC home  |  Federal Reserve Board home

Accessibility  |  Disclaimer  |  Privacy Policy

| NIC Home | Institution Search | USBA Search | HCs > $10B |
| BHCPR Peer Reports | Other Reports | FAQ | |

**Institution History for**  LAKE SUCCESS BRANCH (482772)

4 institution history record(s) found.                < Previous  Page 1 ⌄ Next >

| Event Date | Historical Event |
|---|---|
| 1888-01-01 | ASTORIA FEDERAL SAVINGS AND LOAN ASSOCIATION located at 37-16 30TH AVE, LONG ISLAND CITY, NY was established as a Savings & Loan Association. |
| 2014-06-01 | ASTORIA FEDERAL SAVINGS AND LOAN ASSOCIATION was **renamed** to ASTORIA BANK. |
| 2017-10-02 | ASTORIA BANK was **acquired** by STERLING NATIONAL BANK. |
| 2017-10-02 | ASTORIA BANK was **renamed** to LAKE SUCCESS BR and **became** a branch of STERLING NATIONAL BANK. |

Page 1 of 1

NIC Home  |  FAQ  |  Help  |  Contact Us